USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6-27-14_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HECTOR LAPORTE,

                              Plaintiff,                          11-cv-9458 (PKC)(HBP)

            -against-                                            MEMORANDUM
                                                                 AND ORDER

CORRECTION SERGEANT FISHER and
CORRECTION OFFICER BANKS,

                              Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiff Hector Laporte, proceeding pro se, brings this action pursuant to 18

U.S.C. § 1983 against Correction Sergeant Fisher and Correction Officer Banks in their

individual capacities.  Laporte asserts that Fisher and Banks used excessive force against him in

violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Fisher

and Banks now move for summary judgment against Laporte on the grounds that he failed to

comply with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42

U.S.C. § 1997e (the "PLRA") and that his claims are implausible.  Laporte opposes Fisher and

Banks's summary judgment motion and has moved for the Court to appoint counsel.  For reasons

explained, defendants' motion for summary judgment is granted with respect to the claims

against Banks and denied with respect to the claims against Fisher.  Laporte's motion to appoint

counsel is granted to the extent that the Court's Pro Se Office is respectfully requested to place

the case on the eligible list for volunteer lawyers willing to undertake a case without a fee.

BACKGROUND

            The following facts are either undisputed or described in the light most favorable

to Laporte as the non-movant.  See, e.g., Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir.

2011).  The facts are derived from and matters of which judicial notice may appropriately be taken, the parties' submissions of evidence in connection with the motion, and their respective Rule 56.1 statements, but only to the extent not disputed by Laporte.

Though Laporte has not submitted a sworn statement in opposition to the Banks and Fisher's motion, the Court will consider the assertions in his Rule 56.1 statement and opposition brief to the extent that they are otherwise admissible.  See Geldzahler v. N.Y. Med. Coll., 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010) ("[D]espite [plaintiff] having received the 56.2 Notice, we take into account his status as a pro se litigant and will consider the unsworn statements in his 56.1 Response on the assumption that he would have testified to these statements in his Declaration.").  To the extent that Laporte's earlier sworn testimony conflicts with his later unsworn statements in opposition to the motion, the earlier testimony is accepted as true.  Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.")

I.    Factual History

Between April 5, 2010, and May 7, 2013, plaintiff Laporte was an inmate at the Sing Sing Correctional Facility ("Sing Sing").  (Keyser Decl. ¶ 4.)  At all relevant times, defendant Fisher was employed at Sing Sing as a Correction Sergeant.  (Fisher Decl. ¶ 2–3.)  At all relevant times defendant Banks was employed at Sing Sing as a Correction Officer.  (Corrected Banks Decl. ¶¶ 2–3.)

a.    The Alleged April 24, 2011, Incident

During the last week of April 2011, Laporte was under a "loss of recreation."  (See Harben Decl. Ex. C, at 40.)  During this time, he was not allowed to leave his cell, with limited exceptions.  (See id. at 26, 40.)  One such exception was to attend church.  (Id. at 40.)

- 2 -

On April 24, 2011, Laporte attempted to go to church.  (Id.)  As Laporte was returning from the Sing Sing Chapel, he encountered Banks.  (Corrected Banks Decl. ¶ 5.) Banks had noticed that Laporte was returning from the chapel unescorted, which was unusual. (Id.)  Banks asked Laporte why he was unescorted.  (Id.)  Laporte said that he was permitted to attend church under the terms of his loss of recreation.  (Harben Decl. Ex. C, at 41.)  In response, Banks accused Laporte of "playing games with the facility" and punched him in the stomach. (See Harben Decl. Ex. D, at 1.)  This caused Laporte to vomit on Banks.  (Harben Decl. Ex. C, at 41.)

On May 4, 2011, Laporte filed a grievance against Correction Officer Vasquez. (Harben Decl. Ex. D, at 1.)  In the grievance, Laporte alleged that Vasquez had punched him outside the chapel.  (Id.)  According to Laporte, "as a result, spit came out and onto [Vasquez]." (Id.)  Laporte further alleged that Vasquez had continued to harass him and was "burning [him] on meals, showers and other things that [he was] entitled to."  (Id.)

The Department of Corrections tasked Sergeant Briggs with investigating Laporte's grievance.  (Harben Decl. Ex. F, at 1.)  Laporte told Briggs that he had misidentified Vasquez in his grievance and had submitted a revised complaint against Banks.  (Id.)  Briggs then recommended that the grievance against Vasquez be dismissed.  (Id.)  Though Laporte drafted a complaint against Banks, he never filed it with the Department of Corrections.  (See Bellamy Decl. Ex. 1, at 1; Quick Decl. ¶ 4.)  Laporte did not appeal any decision regarding the incident.  (Harben Decl. Ex. C, at 49.)

b.  The Alleged July 4, 2011, Incident

On the morning of July 4, 2011, Laporte wanted to send a money transfer to the federal government in Washington, D.C.  (Id. at 4, 28–29.)  As Laporte was under a fifteen-day loss of recreation, he asked a corrections officer to help him with the disbursement.  (Id. at 4,

- 3 -

26.)  According to Laporte, the officer did not fill out the disbursement correctly.  (Id. at 5.)

When Laporte complained, the officer told him to accompany him to Fisher's office and explain

the situation to him.  (Id.)  Fisher's office was two flights of stairs down from Laporte's cell.

(See id. at 31; Shivers Decl. ¶ 4–5.)

        Once Laporte was in Fisher's office, Fisher became agitated and asked him why a

person "dress[ed in] green" had the right to tell him "how to do things."  (Harben Decl. Ex. C, at

5.)  Laporte attempted to leave, but was prevented by Fisher.  (Id. at 6.)  Fisher told Laporte that

they "[had] to solve a situation" because Laporte spit on Banks.  (Id.)  Fisher then punched

Laporte in the face.  (Id.; Hutt Decl. 1.)  Fisher continued hitting Laporte until he fell to the floor.

(Harben Decl. Ex. C, at 6.)

        Laporte was subsequently handcuffed and taken back to his cell.  (Id. at 26;

LaFond Decl. 1; Jones Decl. 1; Ross Decl. 1.)  Fisher followed Laporte into his cell and

proceeded to beat him with a salami from Laporte's locker.  (Harben Decl. Ex. C, at 7.)  The

beating continued until Laporte lost consciousness.  (Id.)  Fisher and at least one other officer

then dragged Laporte out of his cell by his feet down two flights of stairs to the hospital.  (See id.

at 18; LaFond Decl. 1; Jones Decl. 1; Ross Decl. 1.)  Laporte "vaguely" remembers that when he

was halfway down the stairs, Fisher spit on him "on behalf of the other officers that [he] had spit

on."  (Harben Decl. Ex. C, at 18.)

        Laporte was brought to the prison hospital and admitted that afternoon.  (Resp. to

Defs.' Mot. for Summ. J. Ex. I, at 1.)  The admission notes indicate that Laporte had two bruises

on his forehead, each measuring 1 inch by 1 inch.  (Id.)  Upon admission, Laporte repeatedly

stated that he wanted to see a psychiatrist.  (Id.)  During a subsequent examinaion, Laporte

denied having a headache or any discomfort around the bruises.  (Resp. to Defs.' Mot. for

Summ. J. Ex. K, at 1.)  He did indicate that he was experiencing "high" levels of pain around his shoulders, lower back, and abdomen.  (Id.)  That night, a hospital physician noted that Laporte appeared to be in discomfort, was groaning, and exhibited "facial grimaces."  (Resp. to Defs.' Mot. for Summ. J. Ex. I at 2.)  The following week, Laporte was prescribed Naproxen and Flexeril for his back pain.  (Resp. to Defs.' Mot. for Summ. J. Ex. K, at 2.)

Laporte alleges that he also suffered broken ribs from the beating.  (See Harben Decl. Ex. C, at 16.)  Hospital records from a visit on June 1, 2012, noted that x-rays showed healed fractures of his ninth, tenth, and eleventh ribs.  (Resp. to Defs.' Mot. for Summ. J. Ex. L, at 1.)

According to Laporte, while he was in the hospital, Fisher attempted to strangle him.  (See Harben Decl. Ex. G, at 21.)  He was, however, interrupted by a nurse and left.  (Id.)  Laporte asserts that he spent at least one month in the hospital.  (Jones Decl. 1; Ross Decl. 1.)

II.  Procedural History

Laporte initially filed suit against Fisher and Banks, both individually and in their official capacities, on December 21, 2011.  (Docket # 2.)  Subsequently, Banks and Fisher moved to dismiss the complaint.  (Docket # 16.)  As Banks and Fisher relied on documents outside the pleading in support of their motion, the Court converted the motion into one for summary judgment.  See Laporte v. Fisher, No. 11-cv-9458 (PKC)(HBP), 2012 WL 5278543, at *7 (S.D.N.Y. Oct. 24, 2012).  On October 24, 2012, the Court dismissed the claims against Fisher and Banks in their official capacities, but allowed the claims against them in their individual capacities to proceed.  Id. at *7.

On May 9, 2012, in opposition to the motion, Laporte submitted sworn statements from James Jones, William Hutt, Romaine Lafond, and Troy Ross.  (Witness Statements &

Grievance Resp. 2–5, Docket # 35.)  Each statement was sworn to before a notary public, and is consistent with Laporte's account.  (See id.)

On April 12, 2013, Laporte was served with a set of interrogatories and document requests.  (Harben Reply Decl. ¶¶ 2–3.)  The interrogatories included a request that Laporte identify any witnesses.  (Harben Reply Decl. Ex. A, ¶ 7.)  Laporte did not respond to the requests.  (Harben Reply Decl. ¶¶ 2–3.)  In an Order dated June 27, 2013, Magistrate Judge Pitman, to whom the case was assigned for general pretrial supervision, ordered defendants' counsel to send duplicate copies of the interrogatories and document requests to Laporte.  (Order 1, Docket # 47.)  The Order further warned Laporte that failure to respond by August 30, 2013 "may result in the imposition of sanctions which may include the dismissal of the complaint." (Id. at 1–2.)

On October 11, 2013, defendants' counsel informed Magistrate Judge Pitman that Laporte had failed to comply with the June 27 Order.  (Endorsed Letter 1, Docket # 49.) Magistrate Judge Pitman noted that Laporte's "ongoing and unexplained refusal to respond to discovery requests and to comply with [his] Order [was] troubling and may warrant the sanction of dismissal."  (Id. at 2.)  However, Magistrate Judge Pitman declined to recommend dismissal in the absence of a formal motion and extended Fact Discovery to November 13, 2013.  (Id.)

Banks and Fisher filed their motion for summary judgment on February 19, 2014. (Docket # 58.)  Pursuant to Local Rule 56.2, counsel supplied Laporte with a Notice to Pro Se Litigants Opposing Motion to Dismiss or Motion for Summary Judgment.  (Declaration of Service 1, Docket # 61.)  Laporte mailed his opposition to the summary judgment motion on April 24, 2014.  (Laporte's Declaration of Service 1.)  Laporte included copies of the witness

statements he had previously submitted as exhibits to his opposition to the motion to dismiss. (<u>See</u> Resp. to Defs.' Mot. for Summ. J. Ex. E, F, G, H.)

LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). A dispute about a fact is material if it "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." <u>Gallo v. Prudential Residential Services, Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). In response, the non-movant bears only a "limited burden of production," <u>Powell v. Nat'l Bd. of Medical Examiners</u>, 364 F.3d 79, 84 (2d Cir. 2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought," <u>Gallo</u>, 22 F.3d at 1223.

Nevertheless, the non-movant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248 (quoting <u>First Nat'l Bank of Ariz. v. Cities Svcs. Co.</u>, 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record," Rule 56(c)(1)(A), Fed. R. Civ. P., and any affidavits relied upon "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Rule 56(c)(4), Fed. R. Civ. P. "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  Liberty Lobby, Inc., 477 U.S. at 249–50 (citations

omitted).  However, the Court must read a pro se party's submissions liberally, especially when a

defendant moves for summary judgment on a pro se plaintiff's claims.  See Graham v. Lewinski,

848 F.2d 342, 344 (2d Cir.1988) ("[S]pecial solicitude should be afforded pro se litigants

generally, when confronted with motions for summary judgment.").

Local Civil Rule 56.1 of this District requires a summary judgment movant to

submit a statement with numbered paragraphs setting forth "the material facts as to which the

moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).  "Each

numbered paragraph in the statement of material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted for purposes of the motion unless

specifically controverted by a correspondingly numbered paragraph in the statement required to

be served by the opposing party."  Local Civil Rule 56.1(c).  "Each statement by the movant or

opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement

of material fact, must be followed by citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."  Local Civil Rule 56.1(d).

## DISCUSSION

I.   Defendants' Motion for Summary Judgment is Granted in Part and Denied in
     Part.

a.   Correction Officer Banks

Banks argues that Laporte failed to exhaust his administrative remedies as

required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e  (the "PLRA").  Under the

PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any . . . correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007).

In order to properly exhaust administrative remedies under the PLRA, inmates must complete the administrative review process in accordance with the rules of the particular institution in which they are confined.  Jones, 549 U.S. at 218.  In New York state prisons, the Department of Corrections and Community Supervision (the "DOCCS") has established a three-step inmate grievance procedure, set forth in N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

First, an inmate must submit a grievance complaint to the clerk within twenty-one calendar days of an alleged occurrence.  Id. § 701.5(a).  The Inmate Grievance Resolution Committee (the "IGRC") then has up to sixteen calendar days to resolve the issue informally.  Id. § 701.5(b)(1).  If there is no informal resolution, the IGRC shall conduct a hearing within sixteen calendar days of receipt of the grievance, and issue a written decision within two working days of the close of the hearing.  Id. § 701.5(b)(2).  Next, an inmate must appeal an adverse decision to the facility superintendent within seven calendar days after receipt of the IGRC's written decision.  Id. § 701.5(c)(1).  The superintendent then has twenty days to render a decision.  Id. § 701.5(c)(3).  Finally, the inmate must appeal to the Central Office Review Committee (the "CORC") within seven calendar days after receipt of the superintendent's written response, id. § 701.5(d)(1), and the CORC must render its final decision on the grievance within thirty calendar days from the time the appeal was received, id. § 701.5(d)(2).  Only after an inmate has

exhausted all three steps of this grievance process may he commence suit in federal court.  See Porter, 534 U.S. at 524.

Laporte concedes that he did not appeal any grievance relating to Banks to the CORC.  (Harben Decl. Ex. C, at 49.)  Consequently, as the claims against Banks may not be adjudicated at this time, the motion for summary judgment is granted with respect to the claims against him.

### b.  Correction Sergeant Fisher

In his reply, Fisher argues that the Court should disregard the witness statements Laporte submitted in opposition to summary judgment because of his failure to comply with discovery requests.  Fisher further argues that the Court should dismiss Laporte's claims in their entirety because they are not consistent with the medical record and are implausible.

### i.  Laporte's Witness Statements

Under Rule 37(c)(1), Fed R. Civ. P., if a party fails to identify a witness, the party may not use that witness to supply evidence for a motion or at trial, "unless the failure was substantially justified or is harmless."  In determining whether the exclusion of testimony is appropriate, a court must consider "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'"  Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)).

First, as the request for exclusion first appears in a reply memorandum, Laporte has not had an opportunity to explain his failure to comply with Magistrate Judge Pitman's multiple orders.  Second, the witness statements have a high degree of importance, as they are

the only submissions that support elements of Laporte's deposition testimony. Third, as the witness statements were first submitted on May 9, 2012, prior to the start of discovery, Fisher was on notice that Laporte had identified four witnesses and intended to rely on their testimony. Until the close of discovery on November 13, 2013, more than one year later, Fisher had the opportunity to depose and investigate these witnesses. Consequently, the Court concludes that allowing Laporte to rely on the witness statements would not prejudice Fisher. Finally, the Court notes that a continuance would be possible, should it become necessary.

As such, taking Laporte's <u>pro se</u> status into account, the Court concludes that Laporte's failure to comply with Magistrate Judge Pitman's discovery orders was harmless with respect to the witness statements and will allow Laporte to rely on them.

### ii.  <u>Laporte's Claims</u>

The Eighth Amendment's prohibition of "cruel and unusual punishment" places restraints on prison officials, including the prohibition of the use of excessive physical force against prisoners. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir. 2003).

In support of the motion for summary judgment, Fisher has submitted documents and witness declarations refuting Laporte's version of events, stating that no force was used against Laporte, and suggesting that Laporte's injuries were self-inflicted.

"While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the

- 11 -

plaintiff, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account."  Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citation omitted).  In this circumstance, however, the moving party still has the burden of showing there is no evidence in the record upon which a reasonable fact finder could find for the plaintiff.  Id.

Fisher argues that because aspects of Laporte's claims are "so bizarre and implausible" in light of his submissions, they should serve to discredit all of Laporte's claims. But the record shows, and it is uncontested, that Laporte was admitted to the hospital on July 4, 2011.  (See Resp. to Defs.' Mot. for Summ. J. Ex. I, at 1.)  If Laporte suffered injuries, inflicted maliciously, at the hands of a correction officer, Laporte would have a plausible claim.  See Scott, 344 F.3d at 291.  Thus, a dispute as to the source of Laporte's injuries would be material.

Further, in this Circuit, Eighth Amendment claims have proceeded to trial, "even where the plaintiff's injury was slight and the proof of excessive force was weak."  Wright v. Goord, 554 F.3d 255, 269 (2d Cir. 2009) (collecting cases).  Assuming, as Fisher contends, that Laporte's testimony is largely unsubstantiated by the medical record, the testimony was given under penalty of perjury and is corroborated by other witness statements.  This is sufficient to create a material issue of fact and defeat summary judgment.  See Scott, 344 F.3d at 291 ("Although [plaintiff's] evidence may be thin, his own sworn statement is adequate to counter summary judgment in this case and must be weighed by a trier of fact."); Smith v. Fields, No. 95-cv-8374 (DAB), 2002 WL 342620, at *6 (S.D.N.Y. Mar. 4, 2002) ("Although the apparent lack of any indication in the medical records suggesting that Plaintiff was in fact slapped and kicked about the head casts some doubt on his claim, it is for the fact finder to determine the

veracity of the Plaintiff's account and whether his allegations, even if standing alone, amount to excessive force.")

Consequently, the motion for summary judgment is denied with respect to the claims against Fisher.

II.   <u>Laporte's Motion to Appoint Counsel Is Granted.</u>

Laporte has moved for an Order appointing counsel to represent him in this action.  Among the factors Laporte lists in support of his motion, he notes that he is unable to afford counsel, he is illiterate in English, has limited knowledge of the law, and has been unable to obtain counsel.

Under the authority of 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  In assessing Laporte's application, the Court must first determine whether his position has substance.  <u>Hodge v. Police Officers</u>, 802 F.2d 58, 61 (2d Cir. 1986).  If this threshold issue has been met, the Court must next examine Laporte's "ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the [petitioner's] ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination."  <u>Id.</u> at 61–62.

As Laporte's claims against Fisher are sufficient to withstand a motion for summary judgment, and the action will proceed to trial, the Court concludes that his position has substance.  The Court further concludes that conflicting evidence between Fisher's account and Laporte's account of the events of July 4, 2011, will likely be presented through testimony, implicating the need for cross-examination.  As Laporte is illiterate in the English language, his ability to present his case would be further impaired.

Therefore, Laporte's motion to appoint counsel is granted to the extent that the Court's Pro Se Office is respectfully requested to place the case on the eligible list for volunteer lawyers willing to undertake a case without a fee.

CONCLUSION

For the foregoing reasons, Banks and Fisher's motion for summary judgment (Docket # 58) is GRANTED with respect to the claims against Banks and DENIED with respect to the claims against Fisher. Laporte's motion to appoint counsel (Docket # 50) is GRANTED to the extent that the Court's Pro Se Office is respectfully requested to place the case on the eligible list for volunteer lawyers willing to undertake a case without a fee. Counsel for defendants is directed to supply plaintiff with copies of all unreported decisions cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      June 26, 2014